UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBIN TURNER,

    Plaintiff,

v.

                              Case No.: 3:20-cv-5991-MCR-HTC

KILO KIJAKAZI,
Commissioner of the Social Security
Administration,

    Defendant,
_____ /

## REPORT AND RECOMMENDATION

This case is before the Court on Robin Turner's ("Turner") complaint under 42 U.S.C. § 405(g) seeking review of the final determination of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34. ECF Doc. 1. The matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(D). Upon review of the record, the undersigned finds the Commissioner's denial of DIB to be supported by substantial evidence and, thus, recommends the decision be AFFIRMED.

## I. ISSUES ON REVIEW

Turner raises the following two issues on appeal: (1) The ALJ committed reversible error by failing to find her migraines, fibromyalgia, and shoulder condition were severe impairments and (2) the ALJ failed to articulate "explicit and adequate" justification for discrediting Turner's subjective complaints of pain regarding her back and neck.

## II. BACKGROUND

On September 19, 2017, Turner, a former dietary technician, filed an application for DIB, claiming an onset date of October 6, 2016, based on the following conditions: degenerative disc disease of the lumbar and cervical spine, fibromyalgia, anxiety, fainting spells, depression and bi-polar disorder.  Tr. 199, 222.[1]  At the time of her application, Turner was three months shy of her 53rd birthday.  T. 37.  She was 5'2" tall and 164 pounds.  T. 37.  Turner has not worked since January 1, 2014.  Tr. 222.

The claim was initially denied on December 1, 2017, and also denied upon reconsideration on January 31, 2018.  Tr. 106.  After a hearing on July 30, 2019, the ALJ issued an unfavorable decision on April 15, 2020.  Tr. 12-24.  The Appeals Council affirmed the ALJ's decision on October 13, 2020, making the ALJ's denial

---

[1] "Tr. _" refers to the transcript page number, as identified on the bottom right-hand corner of the Transcript filed by the Commissioner.

the final decision of the Commissioner. Tr. 1. This Court has jurisdiction under 42 U.S.C. § 405(g).

The 2017 application is Plaintiff's second application for DIB, based on the same conditions; her first application was denied on October 5, 2016. Tr. 15. Plaintiff claims her conditions have gotten worse because she has fallen three (3) times since December 2016. Tr. 39-40. In addition to the conditions identified on Plaintiff's application, she also testified about symptoms related to her shoulder and migraines during the hearing before the ALJ. Tr. 54; Tr. 39-40. In this appeal, Plaintiff states that she is focused only on her physical issues; thus, the Court will not address Plaintiff's mental health or gastrointestinal issues. ECF Doc. 16.

## III.   THE ALJ'S FINDINGS

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five (5) steps. At step 1, the Commissioner determines if the claimant is performing substantial gainful activity. If she is, she is not disabled. At step 2, the Commissioner determines whether the claimant's impairments are severe. If any impairment is severe, the Commissioner proceeds to step 3 to determine whether any severe impairments have lasted or are expected to last for a continuous period of at least 12 months, and if the impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If they are, the claimant is disabled. If not, the Commissioner proceeds to step 4 to determine if the claimant's impairments prevent her from performing her past relevant work. At this step, the Commissioner determines the claimant's residual functional capacity ("RFC"), which is the most the claimant can do despite her impairments. If the claimant cannot perform past relevant work, the Commissioner proceeds to step 5, and determines whether other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, she is not disabled.

Utilizing the above 5-step process, the ALJ made the following findings relative to the issues raised in this appeal:

- Through the date last insured, Turner had the following severe impairments: disorders of the spine and right wrist. (20 C.F.R. § 404.1520(c)).

- Turner had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with no more than frequent climbing of ramps/stairs, balancing, stooping, kneeling, crouching, crawling, or climbing of ladders, ropes, or scaffolds.

- Through the date last insured, Turner was capable of performing past relevant work as a nutrition aide. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 C.F.R. § 404.1565).

- Turner was not under a disability, as defined in the Social Security Act, at any time from October 6, 2016, the alleged onset date, through September 30, 2019, the date last insured. (20 C.F.R. § 404.1520(f)).

## IV. STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th

Cir. 1987)).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1985).

## V.   ANALYSIS

For the reasons discussed below, the undersigned finds the Commissioner's decision should be affirmed because, regardless of whether the ALJ erred in failing to find Plaintiff's shoulder condition, migraines and fibromyalgia were severe impairments, the ALJ considered those conditions in determining Plaintiff's RFC, which determination is supported by substantial evidence.  Also, the ALJ did not err in determining Plaintiff's subjective symptoms of pain were inconsistent with the objective medical records.

### A. Any Error by the ALJ in Failing to Find Turner's Migraines, Fibromyalgia, and Shoulder Condition Were Severe Impairments was Harmless

An ALJ decides whether an impairment is severe at step two of the 5-step analysis. 20 C.F.R. § 404.1520(a). "This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of *any* severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (emphasis added). In other words, "there is no need for an ALJ to identify every severe impairment at step two." *Boler v. Berryhill,* 2018 WL 3142941, at *6 (S.D. Ala. June 27, 2018). Rather, if any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Jamison,* 814 F.2d at 588. Once a case advances beyond step two, the ALJ must consider all impairments, severe or not, at the remaining steps, in assessing the RFC, whether a claimant can return to past work or perform other work, and as long as ALJ does so, any error in failing to find a specific condition as severe is harmless. *See e.g. Gray v. Commissioner of Soc. Sec.*, 550 F. App'x 850, 853-54 (11th Cir. 2013) ("we need not consider whether substantial evidence supports the ALJ's conclusion at step two—that Gray's cervical spine impairment was not a severe impairment—because even if there was error, it would be harmless").

Here, because the ALJ determined Turner suffered from severe impairments of disorders of the spine and right wrist, the ALJ proceeded beyond step two to consider the combined effects of *all o*f Turner's impairments. The record shows the ALJ considered Turner's migraines as part of her RFC determination. The ALJ discussed Turner's migraine headaches in several places in her RFC finding and noted Turner testified about migraines and complained of them to her medical providers in August 2017, February 2018, and November 2019. Tr. 20-22. Despite these complaints, however, the ALJ noted the objective examinations showed Plaintiff suffered from no neurological deficits and had normal sensation. Tr. 21-22, 647, 707-710. Plaintiff's treatment providers reported she had no neuropsychiatric issues, had normal eye contact, and normal behavior. Tr. 499, 504, 515, 531. Moreover, despite telling one medical provider in 2017 that she suffered from migraines twice a month, as the Commissioner points out, Turner denied suffering from headaches during numerous medical visits from November 2016 and May 2019. Tr. 499, 503, 507, 518, 525, 530, 592, 600, 647.

The ALJ also considered Turner's shoulder condition in determining the RFC. For example, the ALJ considered Dr. Freeman's evaluation of Turner, which showed Turner had full range of motion, no muscle atrophy, no tenderness, and normal shoulder function, to be partially persuasive. Tr. 22, 709. The ALJ also cited to diagnostic imaging done in May 2019 that revealed no evidence of a complete tear,

no abnormal appearance, and only mild joint degeneration. Tr. 21, 649. Finally, the ALJ also considered the impact of Turner's fibromyalgia. The ALJ noted Turner was diagnosed with the condition by Dr. Wang in February 2018 and also by providers at the Baptist medical Center Nassau in October 2018. Tr. 21. However, despite the diagnosis, Turner denied having any limitations caused by the fibromyalgia. Tr, 499, 503, 507, 518, 525, 530, 592, 600, 647.

Because the ALJ considered all of Turner's impairments – severe and non-severe, in determining whether Turner could work and with what limitations, any error by the ALJ in failing to identify Turner's migraines, shoulder condition and fibromyalgia as severe impairments was harmless. *See e.g., Ferguson v. Astrue*, 2012 WL 4738857, *9 (N.D. Ala. 2012) ("[B]ecause step two only acts as a filter to prevent non-severe impairments from disability consideration, the ALJ's finding of other severe impairments allowed him to continue to subsequent steps of the determination process and his failure to list headaches as severe does not constitute reversible error because, under the Social Security regulations, the ALJ at later steps considers the combined effect of all the claimant's impairments."). Remand on this ground is, therefore, not warranted.

**B.    The ALJ Articulated Explicit and Adequate Reasons for Discrediting Turner's Subjective Statements of Pain.**

At the hearing, Turner told the ALJ that her conditions have gotten worse since her first disability application was denied in October 2016 because of three (3)

falls that occurred after that date. Tr. 40. Turner said she hurt her shoulder, leg, and neck during those falls. Tr. 40. She complained of being unable to work due to severe pain and inflammation and claimed she spent most of her time in bed alternating between heat and ice compressions. Tr. 39. She claimed pain prevents her from walking and her migraine headaches and concentration problems prevent her from working. Tr. 48. Turner claimed she cannot cook, stand on her feet long, scrub the tub, bend, or make her bed. Tr. 49-49. Turner argues the ALJ failed to articulate explicit reasons for discrediting her subjective statements of pain regarding her back and neck. ECF Doc. 16 at ¶ 23.

When a claimant testifies to subjective complaints of pain, the ALJ must clearly articulate adequate reasons for discrediting the claimant's allegations of disabling symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). The reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ found Turner's subjective symptoms to be inconsistent with the objective medical evidence, the opinion of Dr. Freeman, who performed a consultative examination of Turner, the findings of the state agency medical consultants, and Turner's activities of daily living. Tr. 21-23. The ALJ articulated these reasons in her decision and the ALJ's determination is supported by substantial evidence.

For example, Turner did not go to the emergency room or seek treatment for a doctor for the falls she claimed exacerbated her condition. Tr. 40. She has not had any overnight hospital stays since October 2016. Tr. 50. She also does not use any assisted devices to ambulate. Tr. 41. Second, despite an MRI showing some degenerative changes, greatest at L2-L3, based on mild narrowing, Tr. 538, physical examinations showed no loss of strength in any extremity, no joint or muscle pain, no swelling, no loss of range of motion, and normal sensation. Tr. 21, 499, 501, 503, 504, 525, 592, 597. There was no loss of strength even when Turner reported her pain as a 10/10. T. 606. Moreover, records from several medical providers note that Turner's "imaging does not correlate with patient's complaints". Tr. 590, 600.

The ALJ also found Dr. Freeman's consultative examination of Turner in September of 2019, to be partially persuasive. Tr. 22. According to Dr. Freeman, Turner had no tenderness in her back, normal range of motion in her spine, normal gait and balance, normal shoulder movement, and no neuromuscular deficits. Tr.

706-13. Thus, Dr. Freeman determined Turner "failed to demonstrate physical limitations in her shoulders or wrists." Tr. 712. The ALJ also cited to Tuner's chiropractic records from November 2019, which showed Turner had full motor strength and normal flexion. Tr. 22, 747-760. Additionally, the ALJ noted that the RFC determination of state agency consultant, Dr. Rudmann, was consistent with Dr. Freeman's findings. Tr .22, 102.

The ALJ also considered Turner's activities of daily living and found them to be inconsistent with her subjective symptoms. For example, despite the pain, Turner is able to drive herself to the post office, and also to her doctor's appointments. Tr. 46, 47. During a typical day, Turner gets up, fixes breakfast, eats, and then lays back down. Tr. 47. She will also try to read and can do so for about an hour to an hour and a half, while sitting up in a recliner or bed. Tr. 47. Turner also spends time with her dog. Tr. 47. Additionally, Turner has done some traveling, including take a trip to Pigeon Forge for a family vacation in July 2017. Tr. 49. Contrary to Turner's argument, the ALJ did not conclude Turner was not disabled because of these activities. Instead, the ALJ properly considered these activities in determining how much credence to give to Turner's subjective symptoms. *See e.g., Moore v. Barnhart*, 405 F.3d 1208, 1210 (11th Cir. 2005) (where an ALJ did not err to discredit a claimant's subjective pain statements because of their inconsistencies with her diverse daily activities).

Finally, the ALJ noted that Turner's subjective complaints were inconsistent with the conservative treatment she received for her back and neck, which consisted primarily of injections and chiropractic treatments. Tr. 23. An ALJ may "consider the level or frequency of treatment when evaluating the severity of a claimant's condition." *Sonya E. v. Saul*, 446 F. Supp. 3d 1287, 1298 (N.D. Ga. 2020) (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)). Also, an ALJ may find conservative treatment where a treating physician did not a recommend more frequent or intense treatment plan than regular follow up visits regarding medication management. *Id.* at 1298 (citing *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 862 n.3 (11th Cir. 2017)). A finding of conservative treatment may negate a claimant's subjective statements of pain. *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

Because the ALJ articulated reasons for discrediting Turner's subjective symptoms and the ALJ's findings are supported by substantial evidence, Turner's second ground of error also does not warrant relief.

## VI.  CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1.   The Commissioner's decision denying benefits be AFFIRMED.

2.   The clerk be directed to enter judgment in favor of the Commissioner and close the file.

Done at Pensacola, Florida, this 8th day of July, 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No.: 3:20-cv-5991-MCR-HTC